Now, I was advised by the clerk that one side wished to use some boards here for oral argument. I might remind you we are not a trial court, but it's my understanding that the side that's And also, all of these were in the record, so we're not going outside the record. So it's something that we can look at, and it's merely to, we're not adding anything additional to the record. Am I correct? That's correct from our point of view, Your Honor, and we're the ones that are offering this Jerry Hyatt. And since we don't know who that is, the voice picks it up. Jerry Hyatt for Metzler Contracting. Okay. All right. All right. Now, this, we have cross appeals here. So essentially, but it's all related to the same situation. So my guess, we've got, so I'm sort of thinking that means each of you have rebuttal to the other person's appeal, but you still only have 15 minutes each. And I see many people sitting here, and I want to dispel everyone of the thought that you each have 15 minutes sitting here. You have 15 minutes per side, and that includes your appeal, your cross appeal, your rebuttal, and however you want to divide the argument up. So I am, since no one is approaching the podium, I'm, is, is Counsel for Paul Stevens going to approach the podium to start? Okay. All right. I don't want to start the clock until we just sort of clarify. Does everyone understand this? May I just ask a question, Your Honor, about this Jerry Hyatt? Sure. I hope I know the answer. Jerry Hyatt again from Metzler. So I would assume if I, if when Mr. Scherz is finished speaking, I could present our opposition and reserve a couple of minutes for rebuttal, that he would get up again and rebut me if he wishes, and that I would have the last up. Is that how it would work? Well, basically. But if we feel like we have additional questions, if, depending on how it presents itself, I'm never going to deny anyone on my panel the opportunity to ask a question before they go. So the last say here, you know, it's not, we're not trying to, to make it tricky that way. And, and I think we've moved beyond the point that whoever has the last say wins. So we, we generally go to the long, the merits of the case. You'll have to have time left. Sorry? If you want to get up again, you'll have to have time left. Yes. Exactly. We'll reserve a couple of minutes if it's all right. Thank you. All right. And as always, people get possessive about their time, but I always remind them, really the time belongs to the court. And we take as, it's to answer our questions. And so, as long as we have questions, you get to speak. But otherwise, on your own time, if we use all your time, then all your time is gone. Okay. Thank you. Well, thank you, Your Honors. James Schurz on behalf of Paul Stevens and Ellie Stevens. And with the court's permission, we would ask to reserve two minutes for rebuttal. All right. Thank you. May it please the court that Stevens' appeal here to vacate the underlying arbitration award is premised on two propositions. The first is the plain language of a single, specially negotiated provision in a detailed construction contract, which referred to in the briefs as Article 7.1.3.1. And so that we have that language in mind as we continue our discussion, that section provides, in relevant part, no course of conduct or dealings between the parties shall be the basis of any claim to an increase in any amounts due under the contract. Excerpt of record 143. It is our position that this language divests the arbitrator of jurisdiction to determine a claim for an increase in the contract sum or any amounts owed under the contracts. The second major premise on which the Stevens' appeal is grounded is that the face of the award explicitly and repeatedly demonstrates that the sole basis for this arbitrator's finding with respect to this claim was the course of conduct and dealing of the parties. Well, let me ask you this, just so that, just to kind of frame that issue. We're looking at it, you know, we've talked a lot about standard of review. Here we have a little bit of a double lens, don't we? I mean, first the district court has to look at the arbitration agreement and is looking at it to determine whether it's plausible, correct? And then we're reviewing the district court under another standard of review. Is that correct? This court looks at the district court's analysis de novo. And so it engages directly with the arbitrator's ruling on its own terms. And that standard was articulated by Judge Berzin in Johnson v. Wells Fargo just last year. The point Your Honor raises, though, is the question is how does the court and this court address the underlying issue of the agreement itself? And it is our position, as detailed in our brief, that the court reviews the agreement de novo. It must determine that the award is grounded in the agreement of the parties and the issues they present for resolution, as this court said in co-strating. And it must Do you agree that the parties through their course of conduct could waive Article 7.1.3.1? No, Your Honor, they did not. No, not whether they did or they didn't. Do you agree that the parties could through their course of conduct? You're saying they didn't here, but could parties? Not through one of the three equitable theories that is the basis of 7.1.3.1. So Your Honor raises the question, could these, is this a non-waivable provision? Even faced with the language that pertains to all of the contract provisions, that they may not be waived. And the answer to that question is that these parties expressly agreed in 7.1.3.1 that the arbitrator would not have the authority to determine whether the parties had, by virtue of one of three equitable bases, waived or given up the detailed cost protection standards that are part of this contract. I don't understand that. I mean, if that the party, that having, once you have this provision, one of the parties can't, and one of the parties goes out and says, I want this done in addition and I want this done in addition, and the contractor does it, that the contractor can't get paid because of this provision. The contractor can seek reimbursement for an increase in the contract sum. It just can't seek it under one of the three provisions, the three equitable theories, that Article 7.1.3.1 precludes. So. So what would it use? It could argue that the architect approved it. There are specific provisions for why. This doesn't talk about architect approved it. It says, no course of conduct or dealings nor expressed shall be the basis. Exactly, Your Honor. And my point is. I mean, do they bring in, are you suggesting they bring in unjust enrichment action? No, they can't. Oh, they can't? Well, that's why, that's why I tried to, it seems to me, I guess I'm trying to figure out. So what is the contractor's remedy here, Your Honor? Is they can seek to, they can seek to establish that a change order was not required. And under the AIA documents, there are specific provisions in instances where a change order is not required. They can argue that. But, but, let's just sort of get back a little. Don't you have to, to prevail, show that the arbitrator's interpretation of Article 7.1.31 was implausible? I have to establish that he. Not that it, not that we would interpret it that way or not. You have to show it was implausible, don't you? I have to show that he overrode an express term of the contract under the standard that this court articulated two years ago in Pullmaster. An express term of the contract may not be overridden by the, by the arbitrator. And the, the decisions of this court that I would refer your honors to, and, and you've been kind in asking, what's your best case in this circuit? And, and I would direct the, the court to two decisions specifically. One is the Pullmaster decision by Judge Wallace with, with Judge Hug. In which they decided two years ago that the language that provided that the arbitrator from making a determination as to whether or not those claims could be adjudicated as part of counsel. I read, I read Judge Wallace's decision in Pullmaster. And it seems to me that that is not controlling. Because there, there was a specific provision contained conditions which specifically related to arbitration. In other words, it wasn't a broad contract like this. There were specific provisions relating to arbitration there. Just, your honor, as we would submit, so does 7.1.3.1. When the parties. Well, I, I, I understand what that says. But I also read the contract. And I don't see anything here that doesn't go to arbitration. 4.6.1 says any claim arising out of or relating to the contract. Except claims relating to some which aren't even applicable here. Shall be subject to arbitration. That's correct. Any claim. That isn't what happened in Pullmaster. There was never language like that in there. Well, your honor, what it, what, what Pullmaster stood for the proposition is that claims shall be brought, disputes shall be brought at the defendant's site. Dispute, as it was framed within the context of that technology agreement, was broadly framed. It included the same arising out of or relating to language that we see here. The point is, is that just as in, in this case, the AIA documents have an express carve out for four different types of claims that are not subject to arbitration. What the parties accomplished in 7.1.3.1 was to augment, to add those provisions that would specifically not be subject to arbitration. And specifically, the three equitable theories that, that are identified and enumerated in that provision. Well, that would suggest that what I'm trying to do, what you want me to do is interpret the contract to suggest that 7.1.3.1 gives an exception to 4.6.1. And if I go there, I'm interpreting the contract, and I don't think that's the court's prerogative. Thank you, Your Honor. We are not. I mean, I'm trying to read, I'm trying to read right through what you're saying in order to get there, because if I go where you want me to go, I have to say that this is an exception to 4.6, and in order for me to do that, I've got to interpret the contract, and in order to do that, the arbitrator has the power to do that. The court does not. Your Honor, what we would ask you to do is not to interpret the contract, but rather to enforce the contract according to its terms. As this court has stated on a number of occasions, and as it stated most recently in the Polo Master decision, that it would not override or allow the arbitrator to override an express term of the contract. The consequence, Your Honor, of a provision like this, if we assume that only the arbitrator can construe 7.1.3.1, is that we've read it out of the contract completely. It has no force in effect. Because now we've allowed the defense, in effect, to come in. The defense that was offered by the contractor that the parties, through their course of conduct and dealing, intended to waive the detailed cost protection procedures and contract administration procedures that they agreed to. The contract provisions, we would urge the court to recall and remember that these were specially negotiated. These are not boilerplate provisions. These parties, represented by counsel, entered into supplementary conditions. And under the- Because I'm not sure what you think that, it seems to me that the arbitrator had the jurisdiction to determine how the parties intended to calculate the contract sum. But, so, if that's not the case, then what was the scope of the arbitrator's jurisdiction? The arbitrator was allowed, and it was within the scope of the arbitrator's authority to determine the contract sum. We don't contest that. It was properly, the audit claim, the overbilling claim that the Stevens brought as part of this arbitration was properly within the scope of the arbitration. What was not a part of that was the defense that was offered by the contractor. Namely, that all of those change order procedures, those detailed change order procedures that the arbitrator realized were there for the Stevens, that they could be cast aside or abandoned, to use the language of the arbitrator, in light of the party's course of conduct and dealing. That rationale was specifically precluded by articles section 7.1.3. Are you suggesting that the arbitrator has no authority to find an ambiguity in the contract? The arbitrator has indeed the authority and the province to determine that there is. Isn't that exactly what the arbitrator did here? No, your honor. The arbitrator did not find there was any ambiguity with respect to 7.1.3.1 or the change order procedures, none whatsoever. What he did, at the invitation of the contractor, was citing the Hokama decision, the Hawaiian law, to say that the intent of the parties, the course of conduct of dealing within the parties, creates doubt and ambiguity as to its meaning. The district court, Judge Kaye, found that that was error. The failure of the district court below was in properly identifying the error. He denominated it a legal error when it was, in fact, a jurisdictional error. In this case- Oh, for heaven's sake. If the parties don't pay any attention to the words of the contract and doesn't the arbitrator have the right to look to that? And say that they didn't pay any attention to this, so they abandoned this provision? In this case, your honor, not with respect to these three equitable theories as it relates to an increase in the contract sum. And the rationale, your honor, is that this contract was, in effect, a risk allocation exercise, as all contracts are. And what the parties were saying was, in taking the lessons of this court's reasoning in Todd Shipyard's, which was, if there's a change order procedure and the parties agree to it, it can be waived. These parties, with full knowledge of the limitations of Todd Shipyard, said, well, we're going to insulate ourselves from that. Do you want to reserve for rebuttal? You're at two minutes. I do. Okay, thank you. All right, before I start the clock, are you the only one that's going to be talking on this side? Yes, yes, your honor. Okay. Thank you. Have a lot of briefcases there. Mr. Collette Feldman, Bruce Voss, and David Major all helped with the arbitration, your honor. All right, well, I just want to make sure that- Absolutely. You don't kind of, if there's someone else that's going to talk, that we allocate the time. So- All right, we can start the clock then. Please state your appearance and your name for the record. Jerry Hyatt for the Metzler Contracting Company. And with me is Collette Feldman, Bruce Voss, and David Majors. Thank you, your honors, for your guidance before the argument. I'm going to try to focus on what I think are the key points from my client's perspective. First of all, essentially what's happening here is that there's been a request by the Stevens to have a do-over of a six-week arbitration that resulted about $21 million in swing on a luxury home on the Koala Coast. This process has consumed, I think, more than five years at this point, and I was at the beginning of it. The court's correctly focused on what the arbitrator had to do. First, he had to determine his own jurisdiction. Is his voice going to pick up if he steps away from the microphone? I'll- So you need to stay around the microphone. Okay. That's why these exhibits aren't always a great idea. Well, and I'm glad to let you do it, and I think it's a wonderful thing, but you must know that these notes we have in front of us have these similar things here. I understand. All right. It's just to make it- I mean, juries like this stuff, but we're not jury. I'm not nearly- I mean, that's why they call me judge. There's no justice in the Ninth Circuit, but let's go forward. All right. But we start with what was submitted, and I'll just use them then quickly. We start with what was submitted, and- I like these things. Okay. Just so you don't think we all agree on everything. Thanks, Judge. You started with this point, Judge, and it was that there's a broad arbitration clause here under which every claim and any claim was submitted, and it included interpretation of the contract terms. And I think the arbitrator had to start there, too. Well, let me just ask you to tell me- I asked the Stevens counsel, Mr. Schertz, what's our standard of review here? What does he have to show to prevail? You correctly stated it. I mean, there has to be no- your review of Judge Kaye's decision is de novo, but his review of the arbitrator's decision was no plausible basis for the award, no plausible basis for the award. And Mr. Schertz avoided answering that question. And so that's the standard that's appropriate. So if we go back to this- So we're really reviewing the same thing he reviewed- Exactly. On a no plausible basis. That's right. There has to be no rational basis, and in fact, I excerpted that. Well, that's what I wanted to make sure. Under power agent, you have to find that the arbitrator's decision was completely irrational or constituted a manifest disregard of the law. How do you respond to the Stevens argument that the arbitrator exceeded his authority by increasing the amount due under the preliminary budget based on the party's course of conduct? How do you respond to that? I was about to focus on exactly that. So he had to construe these terms. He goes to 5.1.1, and he- and this says the contract sums the cost of the work plus the contractor's fee, okay? So he looks at that. And then he listens to the Stevens argument that 7.1.3.1, there can't be a change in the contract sum unless there's a change order. So he's got to construe those two provisions together, okay? Then the Stevens argue, well, the contract sum, which is referred to here, is actually this term in 6.5. Because it refers to a preliminary budget, including an itemized schedule of values, which represents the contractor's best estimate of the contract sum. So they start there, and they say that $10 million figure is, in fact, the contract sum. It's not, because a preliminary budget, which represents a best estimate, a current best estimate, is not what's defined as the contract sum. The contract sum is the cost of the work plus the fee. So where do they get this? Well, what does he do next? What he does next- Don't talk. Sorry. Move it. Yeah. What he does next- You got your best dad. Help. Helping you make this good. His best task, then, is to go to 5.2.1 and say, how do I find out whether it's a contract sum? Is it going to change or not? So he goes to 5.2.1, and he notes the two places there where it says there's a not-to-exceed number, a place for it in the contract. Because this is an AIA form built like a bus to haul any number of people, any kind of a job, you just fill in the right blanks. Well, it was not a guaranteed max job, so these blanks were not filled in. There was no maximum price of the contract. So where did this myth of the preliminary budget equaling the contract sum arise in the case? It arose in this instruction from Mr. Anderson to his expert, saying the total construction cost should have been $10 million, which was his preliminary budget. Review it so we can discuss how this might be incorporated in your analysis. So we had a fungible expert who misconstrued the contract at the direction of counsel to create a myth about a contract sum, and that's the entire basis of the audit claim. So what did Mr. Sheehan do? He had to construe it, and under Hawaii law, though he probably misstated about where he should go first, he got it right here in this award when he said, if there's any doubt or controversy as to the meaning of language embodying a contractual bargain, extrinsic evidence may be considered. He cited the correct case. He cited the correct standard. He construed those provisions together, and he came up with the view that the contract sum was the cost of the work plus the fee. So essentially, though, in a way, you're arguing that the arbitrator didn't commit any legal or clear error or something along those lines, but really, we have to look at it to determine plausibility. Seems plausible to me, but that's exactly correct, Your Honor. But you're also, okay. That's exactly correct. And he made a careful analysis of all those terms in a long award, and it came to a very, very plausible explanation, which the court found very plausible. And in doing that, bearing in mind that you're not a jury, he had all of these admissions before he came to that conclusion. He had the admission from Colin Johns, who was the expert who came up with this contract sum theory, the bogus one, that there was a plain definition of contract sum in the contract. He had the admission, again, same gentleman, under the terms of the contract, he was supposed to be reimbursed for the cost of the work plus his fee. He had the admission from Ellie Stevens that she knew it was a cost plus job. Go ahead. Right. Well, but looking at it slightly differently, the other side's position is what is the work? What is the work? Exactly. And that the work had to be what was originally defined unless it were unless it was written in writing that it was expanded. And that didn't happen, so therefore, the work is the original, what was originally contemplated. So something which perhaps isn't clear is that there were no complete plans at the time the preliminary budget was done. There was no definition supplied for what the work would be. And that's why that term, preliminary budget, based on a best estimate is so important. And why the other term, contract sum, is the cost of the work is also so important. Because on a cost plus job, when there's not a guaranteed max, you basically pay as the invoices come in, which she did, and which she admits having done here, okay? She admits to this agreement with Mr. Metzler that she waived the change order process, and she didn't want anything other than for him to keep the records of the job, which she then paid without objection all the way back to $17 million, and it made it so difficult then for her to take the position that she didn't know. The architect also, Mr. Dale, there was no upper limit to the construction job here. I mean, this house was built with things being installed, ripped out, put back. If I get the flavor of this, there were orders, there were instructions being given to the contractor to change the work. Incredibly large instructions, yes. And again, she admitted that there was no budget for the job. And so the arbitrator's finding was, in effect, that because you're- It had been abandoned. That that procedure had been, that that requirement in the contract  Well, with one clarification that I think is very important for a legal analysis of our case, Your Honor, and that's this. If you accept the definitions of the contract that I just walked through, the cost of this work, the price of this job is the cost of the work plus a fee. There was no need for change orders, because it was a cost plus job. In a guaranteed price contract, guaranteed maximum, yeah, you would have a number which you could only change by a change order. But here, the change order process would have just been a budget sort of tracking tool. And by checking off- No, but that's not necessarily true, because a change order doesn't just cover the cost. The change order covers what has to be done. So if you ever, if you're- Fair enough. If your dispute were over whether it called for granite or marble, you would need- Fair enough. You would want to have a written change order. Fair enough. But in this case, basically, it was abandoned. There was only two or three at the beginning, and it was abandoned. So, there were one or other two points, one or two more points I was going to make. And that is, at footnote one of their brief, they abandoned the argument, which they had made below, that there was no jurisdiction on the part of the arbitrator to hear these claims, because they hadn't been submitted first to the architect. And there's an admission here that none of the claims were submitted to the architect, including the one which is the subject of this appeal, the audit claim. A multi-million dollar claim. So, they're taking the position in front of this court that the arbitrator had no jurisdiction on some issues. But they've sort of slyly taken out of the argument the fact that he would have had no jurisdiction on their entire audit claim, which is the subject of this appeal, because it was never first submitted to the architect. So, another argument which we have made is simply that under Mayfair, if they've abandoned this whole submission process, then it would be a moot issue anyway, because you couldn't remand, because the arbitrator wouldn't have jurisdiction, because nothing was ever submitted to the architect. And I think that's the argument they were trying to avoid. All right, then you have your other issue, and I wonder, where in the record do you properly preserve the argument that the party's course of conduct below showed a clear intent to use the Hawaiian rules of arbitral procedure? And even if the argument is not waived, how do you rebut the default presumption that the FAA, not state law, supplies the rules for arbitration? Thanks, Sharon, I was about to go to that. First- If you want to reserve any time, you better do it quickly. Okay, well- I'll get to your question. I'm going to reserve a minute and a half, if I can. And in the remaining minute that I've got here, I'll try to answer your question. First of all, up until the argument in front of the US District Court, Judge Kay, both sides were claiming attorney's fees under 658-25, the Hawaii Arbitration Act, which has a really wonderful policy. It is that if you fight about an award, prevailing party gets fees. So if it's fine, you can make any agreement you want to prior to that time, but if you fight about an award, prevailing party gets fees. And that's great policy, and it's the policy of the state of Hawaii. At the beginning of that argument, Mr. Scherz was asking for fees. Judge Kay clarified that the only basis for it was under Hawaii law. We were also asking for fees from the point of the arbitration award onwards, and we're asking for them here. That's the first time, I mean, his decision was the first time that we knew that fees would not be awarded. Through the state of, through the point of that argument, okay? They were asking for them, Mr. Scherz was asking for them. So we preserve because we ask for them below, and they ask for them below, and we're asking for them now. The clear course of conduct by the Stevens in this case was repeatedly throughout the arbitration leading up to the motion to dismiss, they ask for fees. All that's required under George Day and your other cases is a clear course of conduct showing the adoption of the state rule under the FAA. That's here. You can use this case for something more than the disposition of a garden variety arbitration decision. You can use this case to tell the next litigant, if you fight about an arbitration award, and the state statute provides for prevailing party attorneys fees thing, you're at risk, and that would be a useful thing for the panel to do. I'll reserve. All right, thank you. Thank you, Your Honor. If I could pick up on a couple of points, and first with respect to a comment, Judge Schroeder, with respect to the nature of the effect of this course of conduct in dealing. In response, you heard from the contractor's counsel that, in fact, there were no change orders that were even necessary in this contract. That construction requires you not only to set aside 7.1.3.1, but to also set aside all of Article 7, and to set aside all of Article 6.5. It requires you to find that the arbitrator got it wrong when he said that the parties agreed to detailed contract administration procedures that included cost protection measures. What Mr. Hyatt is urging you to do is adopt a version of the contract that no one ascribes to. And with respect to the nature of the inquiry that is incumbent upon this court, we would ask again, in looking at the Polo Master decision, and looking at the Coast Trading, that the proper source of analysis is to ask whether there was an express term that limited the arbitrability, limited the jurisdiction of the arbitrator with respect to certain claims. And we submit that that is the only construction that is afforded under 7.1.3.1. That it is not ambiguous in any way. That the absence of any language with respect to arbitrability is of no consequence here, because these parties intended to foreclose the very arguments that you've now been provided with. Evidence that was presented at the hearing, which the Stevens objected to at the time in the context of a motion to eliminate, objected to in the form of a summary disposition, and argued that the arbitrator should not hear it because he was precluded from hearing it under this provision. Addressing very quickly, if I may, the choice of law question, I'd refer the panel to our petition to vacate. You will see at the petition to vacate, ER44-66, we did not request attorney's fees. What you heard from Mr. Hyatt was just wrong. There was at no time any indication that the Stevens sought attorney's fees in the context of this vacature confirmation proceedings. So when is the first time attorney's fees were sought? In the underlying arbitration before the arbitrator. It had nothing to do with the proceedings that were filed in the District Court of Hawaii. And under Johnson v. Grouma, this court's recent decision, it is that which is incumbent upon this court to look to. What was the party's intent in terms of adopting the procedural rules for confirmation and vacature of the proceeding? And as you'll see in Judge Kaye's analysis below, there's no indication, there's no evidence that these parties, through any of their agreements, sought to invoke the procedural rules of Hawaii, with respect to the confirmation and vacature proceedings. And that throughout, the Stevens have argued for application of federal law. If there are no further questions. Thank you. Thank you. All right, I gave the appellant, respondent, or whatever, both, I gave the Stevens side a minute and a half over. So you can add a minute and a half to show how generous I am. You're very kind. So let me just start with the first point. And that is, or the last point that Mr. Schurz raised. Because he took the position that he was not claiming attorney's fees for Judge Kaye. And I very respectfully but vigorously disagree. It's in the transcript. Judge Kaye asked him if he was claiming attorney's fees. He said yes. And then he had a colloquy with him about upon what basis. And Judge Kaye said it's only under Hawaii law that they're available, because they're not available under the FAA. So I just turn you to the record. The second point I wanted to make is. You have a spot at the record? We can look at that. I hate to use your time to do that, but, okay, just go forward while your mad briefers are helping you out. I hope my colleague can find it, but it's there. And the transcript is in, I think, the second volume of one of the records. The other underlying argument that Mr. Schurz has made is that 7.1.3.1 is somehow jurisdictional. And I just suggest to you that if that clause is jurisdictional under this closely negotiated contract, they could have put it in the right place to deal with the arbitration clause in the any claim provision, but they did not. The representation that this was closely negotiated or a carve out is untrue. There hasn't been a single site to the record by the Stevens showing that it was taken with a view of the Todd Shipyard's case. So it is at one SCR- Call it one LBJ, Judge K and counsel, I swear. One SCR 34, the court, you both asked for attorney's fees. Mr. Schurz, in our request. Yes. Goes on from there. All right, your time is basically expired, so. Thank you for your time and attention. All right. And I also wanted to say, thank you very much for coming out to see us at the beginning. That was, showed a lot of aloha. Our pleasure. We enjoy meeting, we enjoy meeting counsel. And we assure you that Judge Schroeder would have been there if she hadn't had that very important call. And she'd have been the best one to shake hands with. She's got the most gray hair, but she'll be here tomorrow. All right, thank you everyone today for your argument. This matter will stand submitted. We're at recess tomorrow till 9 o'clock. All rise.
judges: Schroeder, Callahan, Smith